Patricia A. WOLFE, Plaintiff,

v.

Robert H. WOLFE, Defendant.

Civ. A. No. 82–644–15.

United States District Court,
D. South Carolina,
Columbia Division.

May 27, 1983.

Jan L. Warner, and C. Dixon Lee, III, Sumter, S.C., Francis T. Draine, and James T. McLaren, Columbia, S.C., for plaintiff.

George W. Speedy, Camden, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

 This matter is before the court on plaintiff's motion for costs and attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1920 and 18 U.S.C. § 2520. On March 11, 1983, plaintiff, Patricia A. Wolfe, was awarded a verdict against Robert H. Wolfe in the sum of Nine Thousand Five Hundred Thirty and No/100 ($9,530.00) Dollars (actual and punitive damages) for his violation of certain provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, specifically, 18 U.S.C. § 2520. At the court's direction, the plaintiff was granted leave to apply for an award of costs and reasonable attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 18 U.S.C. § 2520, respectively. Rule 54(d) provides that, "costs shall be allowed as of course to the prevailing party unless the court otherwise directs; ..." Although costs under Rule 54(d) ordinarily do not include attorneys' fees, that general rule is subject to exception given a controlling state or federal statute. 6 J. Moore, *Moore's Federal Practice* ¶ 54.77[2]. Since Title 18 U.S.C. § 2520, commonly referred to as the "federal wiretap act," allows a successful litigant to recover "a reasonable attorney's fee and other litigation costs reasonably incurred," the court will assess attorneys' fees against the defendant Wolfe.

## COSTS

The court first turns its attention to the plaintiff's bill of costs as filed April 7, 1983, wherein the following elements were claimed:

From the office of Jan L. Warner, Esq.

| | | |
|---|---|---|
| (1) | Copies (at 25 cents each) | $ 643.25 |
| (2) | Westlaw | 486.67 |
| (3) | Postage | 45.10 |
| (4) | Telephone | 130.00 |
| (5) | Filing Fee | 60.00 |
| (6) | Armstrong Services: Delivery and Service of Subpoenas | 497.10 |
| (7) | Witnesses fees/mileage | 292.00 |
| (8) | Jan L. Warner Travel Expenses | 212.00 |
| (9) | C. Dixon Lee, III, Travel Expenses | 30.00 |
| (10) | Federal Stenographers/Depositions/Transcripts | 742.59 |
| (11) | Certified Copies | 4.40 |
| (12) | Letter Reporting Service | 106.00 |
| | Total Expenses and Disbursement | $3,249.11 |

and

### From the office of James T. McLaren, Esq.

| | | |
|---|---|---|
| (1) | Copies (at 25 cents each) | $ 576.50 |
| (2) | Postage (at cost) | 9.79 |
| (3) | Long distance telephone | 205.00 |
| (4) | Mileage fees | 21.00 |
| (5) | Working lunch with Attorney Warner *re* trial preparation | 25.00 |
| (6) | Trial preparation dinner with Attorneys Draine, Warner & McLaren *re* formation of final arguments | 39.26 |
| (7) | Witness fee (Manager, Radio Shack, Camden, S.C.) | 33.20 |
| (8) | Services of Attorney Michael Tongour in connection with Deposition review and reading during trial | 125.00 |
| | Total | $1,034.75 |

In determining allowable costs under Rule 54(d), the court is guided by 28 U.S.C. § 1920, which provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

■ The court is also mindful of the approach taken by Mr. Justice Black in the 1964 case of *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248:

> We do not read that Rule (Fed.R.Civ. Proc. 54(d) as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny. Any other practice would be too great a movement in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation. *Id.* at 235, 85 S.Ct. at 416.

It is in the light of 28 U.S.C. § 1920 and the above pronouncement that the court considers the individual cost items claimed. Of the cost items submitted from the office of Jan L. Warner, items five (5), six (6), eleven (11), and twelve (12), totaling Six Hundred Sixty-seven and 50/100 ($667.50) Dollars, are clearly allowable. Of the cost items submitted from the office of James T. McLaren, items four (4), seven (7), and

eight (8), totaling One Hundred Seventy-Nine and 20/100 ($179.20) dollars are clearly appropriate. However, the remaining items are subject to modification or disallowance for the following reasons.

■ The first item of consideration consists of the claim totaling One Thousand Two Hundred Nineteen and 75/100 ($1,219.75) Dollars for the cost of photocopies. This claim reflects the cost of copying four thousand eight hundred and seventy-nine (4,879) documents at a cost of twenty-five (25) cents per page. Expenses for photocopying are taxable as costs if the reproductions are offered into evidence or are otherwise necessarily obtained for use in the case. *Sperry Rand Corporation v. A–T–O, Inc.,* 58 F.R.D. 132 (Va.1973). While the court is somewhat hard pressed to find that this volume of photocopying was "necessarily obtained for use in the case," the court will nevertheless allow the costs of photocopies at the price of ten (10) cents per page, a per page cost deemed more reasonable. Therefore, the total allowable cost for both offices is Four Hundred Eighty-seven and 90/100 ($487.90) Dollars.

■ The items of cost reflecting postage and long distance telephone calls, items three (3) and four (4) from Mr. Warner's office and items two (2) and three (3) from Mr. McLaren's office are not allowable costs under Rule 54(d) or 28 U.S.C. § 1920. *Wahl v. Carrier Manufacturing Co., Inc.,* 511 F.2d 209, 216–17 (7th Cir.1975) and *Moss v. ITT Continental Baking Company,* 83 F.R.D. 624 (E.D.Va.1979). Additionally, the court considers the charges of item two (2) from Mr. Warner's office for the use of the Westlaw computer to be similar to typing charges, which are presumably incidental to the attorneys' services, and therefore, not considered to be valid costs. *Wahl,* 511 F.2d at 217 and *Advance Business Systems and Supply Co. v. SCM Corporation,* 287 F.Supp. 143 (D.Md.1968), *aff'd,* 415 F.2d 55 (4th Cir.1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101. The travel expenses of the attorneys, set forth as items eight (8) and nine (9) from Mr. Warner's office and

items four (4) and six (6) from Mr. McLaren's office are also not recompensable costs under Rule 54(d) or 28 U.S.C. § 1920 and are, therefore, disallowed. *Wahl,* 511 F.2d at 217; *Sperry Rand,* 58 F.R.D. at 139. *See also, Postow v. Oriental Building Association,* 455 F.Supp. 781, *aff'd,* 627 F.2d 1370 (D.D.C.1978) (unspecified out-of-pocket expenses of counsel are not normally taxable as costs).

■ The remaining items of cost claimed are item seven (7) from Mr. Warner's office, witness fees and mileage, and item ten (10), depositions and transcripts, also from Mr. Warner's office. Item seven (7) reflects witness fees and mileage costs of Two Hundred Ninety-two and No/100 ($292.00) Dollars. The itemized statement reflects witness fees and mileage of four (4) witnesses who neither testified at trial nor, to this court's knowledge, were even present at trial. Therefore, no fee may be taxed to the defendant for Frank Rabon, Jr., Paul Bowers, Linda Hinson or James R. McDonald. *Holmes v. Oxford Chemical, Inc.,* 510 F.Supp. 915 (D.Ala.1981); *U.S. v. Article of Drug,* 428 F.Supp. 278 (D.Tenn.1976) and 10 Wright and Miller, *Federal Practice and Procedure* § 2678. The disallowance of the witness and mileage fees for the above named persons reduces the award of costs for item seven (7) to One Hundred Fifty-five and No/100 ($155.00) Dollars.

Just as costs are not allowed for witnesses who do not testify at trial, costs for depositions not introduced at trial are generally not recompensable under Rule 54(d) and 28 U.S.C. § 1920. As Judge Merhige set forth in *Sperry Rand:*

Recent decisions concerning the taxability as costs of deposition transcripts reach uniform results. If the depositions were needed merely for discovery, their expense should be borne by the party taking them, as incidental to normal trial preparation. If, however, the deposition transcripts were actually introduced at trial or used for impeachment purposes, then the Court can conclude that they were "necessarily obtained for use in the case. (cites omitted) 58 F.R.D. at 138.

Since only the deposition of Robert H. Wolfe was introduced at trial, the court does hereby disallow the cost of the depositions of Paul Bowers, Linda Hinson, and James Rabon. *Marcoin, Inc. v. Edwin K. Williams and Co., Inc.,* 88 F.R.D. 588 (E.D. Va.1980). The court notes that the original cost claimed for *all* depositions in item ten (10) was for the sum of Seven Hundred Forty-two and 59/100 ($742.59) Dollars. However, the actual disbursements reflected in the statement from Mr. Warner's office for depositions/transcripts only totaled Six Hundred Sixty-five and 09/100 ($665.09) Dollars. Therefore, the court disallows the costs of the depositions of Paul Bowers, Linda Hinson, and James Rabon, totaling Two Hundred Thirty-nine and 24/100 ($239.24) Dollars and allows the total cost of defendant Wolfe's depositions, the sum of Four Hundred Twenty-five and 85/100 ($425.85) Dollars.

For the foregoing reasons and based on the cited authorities, the court determines that the plaintiff, Patricia A. Wolfe, is entitled to recover the following costs from the defendant Robert H. Wolfe, such costs reflecting disbursements from both the office of Mr. Jan Warner, Esq., and that of Mr. James McLaren, Esq.:

### ALLOWABLE COSTS

| | | |
|---|---|---|
| (1) | 4,879 copies (at 10 cents each) | $ 487.90 |
| (2) | Filing fee | 60.00 |
| (3) | Armstrong Services: Delivery and Service of Subpoenas | 497.10 |
| (4) | Witness fees/mileage | 209.20 |
| (5) | Federal stenographers/depositions/transcripts | 425.85 |
| (6) | Certified Copies | 4.40 |
| (7) | Services of Michael Tongour | 125.00 |
| (8) | Loter Reporting Service | 106.00 |
| | Total | $1,915.45 |

### ATTORNEYS' FEES

Pursuant to the court's direction, plaintiffs' counsel have submitted an affidavit in accordance with the Fourth Circuit decision of *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978), to provide a basis for the court's findings with regard to an award of attorneys' fees. Additionally, in support of

their motion for an award of attorneys' fees, plaintiff's attorneys submitted the affidavit of F. Glenn Smith, Esq., a practicing attorney, licensed to practice in the state of South Carolina, and the affidavit of Kermit S. King, Esq., also a practicing attorney, licensed to practice in South Carolina. In response to the plaintiff's motion for attorneys' fees, defendant Robert H. Wolfe filed a reply accompanied by the affidavits of Rolly W. Jacobs, Esq., John Ehrenclou, Esq., William R. Byars, Jr., Esq., and Charles B. Baxley, Esq., all practicing attorneys in the state of South Carolina. After reviewing these submissions, the court makes the following findings and award:

1. *The time and labor expended.* Jan L. Warner expended 69.75 hours in office and 76.50 hours out of office on this case, James T. McLaren spent 135.50 hours in office and 38.00 hours out of office, Dixon Lee spent 41.75 hours in office and 14.00 hours out of office and the time spent in preparation for trial by law clerks and paralegals totaled 100.25 hours.

2. *The novelty and difficulty of the questions raised.* The court recognizes that there was an absence of case law within the Fourth Circuit concerning cases decided under 18 U.S.C. § 2520 and that the South Carolina Supreme Court decision of *Baumrind v. Ewing,* 276 S.C. 350, 279 S.E.2d 359 (1981) and the Fifth Circuit decision of *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.1974) cast some doubt on the issue of "interspousal immunity" from suit under 18 U.S.C. § 2520. However, the court also notes that the issues involved were not as novel to plaintiff's counsel as asserted. Mr. Jan L. Warner handled the case of *Baumrind v. Ewing, supra,* in 1981, and Mr. Warner and Mr. James T. McLaren previously handled the case of *Piester v. Browder, et al.,* Civil Action No. 82–377–15, a case involving the application of the federal statute in a domestic relations situation, before this court in the spring of 1982. Additionally, during the same term of court in which the instant case was heard, both Mr. Warner and Mr. McLaren handled virtually identical issues in the case

of *Rabon v. Rabon,* Civil Action No. 82–2142–15. While the case did necessitate a good deal of research, it was actually spread between the four cases. Also, once the question of the applicability of "interspousal immunity" was resolved by this court, the issues for trial were extremely straightforward: whether the defendant did wilfully tap his wife's phone, the approximate duration of the tap, and a showing of the plaintiff's damages. The presentation of the plaintiff's entire case took but one day.

However, the court does acknowledge that the defendant's assertion of his Fifth Amendment rights up until the eve of trial necessarily increased the complexity of trial preparation.

3. *The skill requisite to perform the legal service properly.* Because of the nature of the case and the novelty of the issues, as made more complex by the defendant's assertion of the Fifth Amendment, it was necessary to have experienced attorneys involved in preparing and trying the case.

4. *The preclusion of other employment by the attorneys due to acceptance of the case.* Attorneys for the plaintiff were required to neglect other clients somewhat in order to pursue the instant litigation due to the number of hours spent and the concentrated time required in trial preparation. However, as noted, this preparation was consistent with issues involved in other cases being handled by plaintiff's attorneys at or about the same time.

5. *The customary fee.* In view of the supporting affidavits of both parties, the court concludes that the customary fee for similar services in the Columbia/Sumter/Camden, South Carolina, area ranges from a minimum of $50.00 per hour to $100.00 per hour.

6. *Whether the fee is fixed or contingent.* It was initially anticipated by the attorneys for the plaintiff that the services rendered in this action would be charged on a contingent fee basis. However, in view of the plaintiff's financial

condition and the judgment awarded, plaintiff's counsel subsequently agreed that reasonable attorneys' fees would be awarded by the court pursuant to 18 U.S.C. § 2520. The court is informed that plaintiff's counsel recovered their out-of-pocket costs from the judgment, but that the plaintiff will be reimbursed those amounts from this court's award of costs pursuant to Rule 54(d), as fully set forth above.

7. *Time limitations imposed by the client or the circumstances.* There were fairly severe time limitations imposed on plaintiff's attorneys prior to and during trial. There were several days where both counsel for plaintiff devoted sixteen or more billable hours of their time to the case. The court also notes that the defendant's assertion of the Fifth Amendment during discovery and the subsequent abandonment of that right on the eve of trial required the retaking of his deposition on the day before trial, depriving plaintiff's counsel of crucial trial preparation time.

8. *The amount in controversy and the results obtained.* Pursuant to 18 U.S.C. § 2520, an aggrieved party is entitled to relief of $100.00 per day for each interception, disclosure, or use of a mechanical or other device, but not less than $1,000.00, in addition to other actual damages and punitive damages. The amount in controversy in this case was difficult to determine prior to defendant Wolfe's admission, on the eve of trial, of twelve (12) days of interception. The parties had been separated since August 28, 1981, and the wiretap device was not discovered by the plaintiff until December 30, 1981. The judgment obtained in this case entitled the plaintiff to $1,200.00 actual damages, $8,330.00 punitive damages plus costs and attorneys' fees.

9. *The experience, reputation and ability of the attorneys.* Jan L. Warner has been practicing law in Sumter, South Carolina, for almost fifteen (15) years. C. Dixon Lee, III, has been practicing law for almost six (6) years. James T. McLaren has been practicing law for ap-

proximately six and one-half (6½) years. The primary expertise of Jan L. Warner, C. Dixon Lee, III, the staff of Jan L. Warner, and of James T. McLaren is in the field of family litigation.

10. *The undesirability of the case.* Although the case was not undesirable, the court notes that some attorneys may have been reluctant to become involved in wiretap litigation given the unsettled case law in South Carolina and the limited recovery obtained in cases of this nature in other jurisdictions.

11. *The nature and length of the professional relationship with the client.* Jan L. Warner had represented the plaintiff in her divorce action since approximately October 1981, some two (2) months prior to the discovery of the wiretap on December 30, 1981. James T. McLaren did not represent the plaintiff until subsequent to the wiretap being found. From the finding of the wiretap through the trial and verdict on March 11, 1983, Jan L. Warner and James T. McLaren represented the plaintiff for approximately fifteen (15) months.

12. *Awards in similar cases.* The only case cited by plaintiff's attorneys that is substantially analogous to the instant case is that of *Campiti v. Walonis,* 611 F.2d 387 (D.Mass.1979). In that case the two plaintiffs received $1,000.00 each for the one interception of their phone conversation. In finding the expenditure of 84.3 hours at $60/hour to be reasonable, the court awarded the plaintiffs attorney fees in the amount of $5,058.00.

In calculating the appropriate amount of the award of attorneys' fees in this case, the court is guided by the Fourth Circuit case of *Anderson v. Morris,* 658 F.2d 246 (4th Cir.1981) which sets forth the following:

[A]scertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation.... The court should

then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other [Barber] factors, briefly explaining how they affected the award.

Of course, making this time-rate calculation is not a mechanical exercise. The judge must determine, for example, what hours may reasonably be included. When several firms are involved, the issue of duplication can be especially difficult. The judge must decide the rate of compensation for various services, such as those performed by partners and associates. Moreover, in determining both time and rate, the judge must evaluate the quality as well as the quantity of the attorneys' work. *Id.* at 249.

As represented to the court, Jan L. Warner expended 69.75 hours in office and 76.50 hours out of office, James T. McLaren spent 135.50 hours in office and 38.00 hours out of office, Dixon Lee spent 41.75 hours in office and 14.00 out of office, and the time spent in preparation for trial by law clerks and paralegals totaled 100.25 hours. The court finds Seventy ($70.00) Dollars per hour in office and Eighty-five ($85.00) Dollars per hour out of office to be an appropriate amount for the time of Jan L. Warner, Fifty ($50.00) Dollars per hour in office and Seventy-five ($75.00) Dollars per hour out of office for James T. McLaren, Fifty ($50.00) Dollars per hour in office and Sixty-five ($65.00) out of office for Mr. Dixon Lee, and Twenty-five ($25.00) Dollars per hour a reasonable award for the time spent by law clerks and paralegals.

Pursuant to the third step outlined in *Anderson,* the court determines an initial amount for the fee award of Twenty-four Thousand Seven and 50/100 ($24,007.50) Dollars, subject to modification or adjustment. The fourth step of the *Anderson* analysis requires the court to adjust the fee on the basis of the twelve factors enumerated in *Barber v. Kimbrell's, Inc., supra,* set forth by the affidavit of plaintiff's counsel, and reviewed herein.

Initially, the court believes that an inordinate amount of time was spent by all three of the plaintiff's attorneys for the "review" of their independent acts. Of Mr. Jan L. Warner's in office hours, twenty-one (21) were spent in review of Mr. McLaren's or Mr. Lee's actions; of Mr. McLaren's in office hours, fifty-six hours and seventy-five minutes (56.75) were for similar "review;" and of Mr. Lee's in office hours, fifteen hours and seventy-five minutes (15.75) were spent reviewing the efforts of Mr. Warner and Mr. McLaren. The court is of the opinion that the defendant aptly characterized these expenditures as hours spent "for the right hand to find out what the left hand was doing." Defendant's Reply at 2. For this reason, the court concludes that the initial award should be reduced to reflect the inordinate amount of time claimed for such "review." Review time totaled Five Thousand Ninety-five and No/100 ($5,095.00) Dollars of the initial award. The court does hereby disallow two-thirds (⅔) of this amount, Three Thousand Three Hundred Ninety-six and 66/100 ($3,396.66) Dollars, thereby reducing the initial fee award to Twenty Thousand Six Hundred Ten and 84/100 ($20,610.84) Dollars.

It is well settled that the recovery of attorney's fees is within the sound judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered. *Lea v. Cone Mills Corporation,* 467 F.2d 277 (4th Cir.1972).

In calculating an award of attorneys' fees, the court must, "begin with a figure based on the number of hours *reasonably* expended." (emphasis added) *Anderson,* 658 F.2d at 249. After careful review of the time statements issued, the actual issues involved in this litigation, the fact that the asserted "extensive research" required was actually spread between the *Baumrind, Piester* and *Rabon* cases, as well as the instant case, and in consideration of the fact that the presence of three counsel in a case of this nature probably involved a certain amount of duplication of work, the court is of the opinion that the time claimed

by the plaintiff's attorneys is not reasonable.

■ As discussed more fully above, after the resolution of the issue of "interspousal immunity," the issues for trial were extremely straightforward. Indeed, the court here is of the opinion, as was the Fourth Circuit in the case of *Gibbs v. Blackwelder,* 346 F.2d 943 (4th Cir.1965), that plaintiff's attorneys themselves may have made the proceedings more complicated than necessary. By way of specifics, the court notes that some ten (10) hours were spent among all three counsel considering impleading the manufacturer of the wiretap, an idea which was subsequently abandoned. Additionally, some time was spent by Mr. Warner researching RICO as a possible cause of action. The court is of the opinion that the defendant Wolfe should not be held responsible for work done on substantially separate issues which the plaintiff's counsel raised, but did not pursue. *Ramos v. Lamm,* 539 F.Supp. 730 (D.Col.1982). It is also noted that some thirteen (13) hours were expended by plaintiff's attorneys drafting voluminous and often repetitive requests for charge, the vast majority of which were not used by the court.

The court also feels that the presence of three counsel, two being lead counsel, involved a certain amount of duplication of effort in a case of this nature. As pointed out by the defendant in his reply memorandum, both lead counsel attended depositions held August 23, 1982, and all three counsel attended jury selection on March 7, 1983, claiming sixteen and one-half (16½) billable hours for the selection of one jury.

■ In conclusion, the court also notes that as a general proposition, the extent to which a plaintiff has prevailed is a factor to be considered in computing the amount of attorneys' fees awarded in a particular case. *Wheeler v. Durham City Board of Education,* 585 F.2d 618 (4th Cir.1978), citing *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.1978). In view of the award in this case of Nine Thousand Five Hundred Thirty and No/100 ($9,530.00) Dollars and

the court's finding of a somewhat unreasonable expenditure of time on this case, all as previously set forth more fully, the court finds that the initial fee award of Twenty Thousand Six Hundred Ten and 84/100 ($20,610.84) Dollars should be reduced by a factor of 25%, Five Thousand One Hundred Fifty-two and 71/100 ($5,152.71) Dollars.

In sum, the court concludes that the plaintiff is entitled to a reasonable attorneys' fees in this action of Fifteen Thousand Four Hundred Fifty-eight and 13/100 ($15,458.13) Dollars plus allowable costs, as set forth in the itemized statement, of One Thousand Nine Hundred Fifteen and 45/100 ($1,915.45) Dollars.

IT IS THEREFORE ORDERED that the plaintiff, Patricia A. Wolfe, recover from the defendant Robert H. Wolfe the sum of Fifteen Thousand Four Hundred Fifty-eight and 13/100 ($15,458.13) Dollars for attorneys' fees and costs in the amount of One Thousand Nine Hundred Fifteen and 45/100 ($1,915.45) Dollars. The Clerk of this Court shall forthwith enter judgment against the defendant and in favor of the plaintiff as herein awarded.